NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-326

COMMONWEALTH

vs.

FREDERICK PALLAS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the Superior Court, the defendant was found to be a sexually dangerous person (SDP), and was committed to the Massachusetts Treatment Center for an indefinite period. See G. L. c. 123A, § 14 (d). On appeal, he argues that the trial judge erred in failing to give a so-called Suave instruction, see Commonwealth v. Suave, 460 Mass. 582, 588 (2011), and that the prosecutor exceeded the bounds of permissible advocacy during cross-examination of certain witnesses and, again, during closing argument. Because we agree with the defendant that the judge's instructions were insufficient, thereby entitling him to a new trial, we vacate the judgment and set aside the verdict.

Discussion. 1. Jury instructions. Because the defendant timely objected to the absence of a Suave instruction at trial,

we review the defendant's claim for prejudicial error.  See Commonwealth v. Vargas, 475 Mass. 338, 348 (2016).  "The failure to give a requested jury instruction is reversible error only if the requested instruction is (1) substantially correct, (2) was not substantially covered in the charge given to the jury, and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense" (citation omitted).[1] Commonwealth v. DeGennaro, 84 Mass. App. Ct. 420, 431 (2013).

"To commit a person as an SDP, the jury must determine that the person has been 'convicted of a sexual offense, suffers from a mental abnormality . . . that renders him a menace to the health and safety of others, and is likely to engage in sexual offenses if not confined." Commonwealth v. George, 477 Mass. 331, 338 (2017), quoting Commonwealth v. Fay, 467 Mass. 574, 580, cert. denied, 574 U.S. 858 (2014).  "The term 'menace,' as it is used in the definition of '[m]ental abnormality' in G. L. c. 123A, § 1, and as that term is used in the definition of '[s]exually dangerous person,' which requires proof of the likely commission of a 'sexual offense,' connotes a person whose

---

[1] "Before a judge is required to give a requested instruction, there must be some basis in evidence, viewed in the light most favorable to the proponent, supporting the requested instruction." Commonwealth v. Anestal, 463 Mass. 655, 674 (2012), quoting Commonwealth v. Cook, 419 Mass. 192, 201 (1994).

conduct will objectively put his victim in fear of bodily harm by reason of a battery and, specifically, a contact sex crime" (emphasis added). Fay, 467 Mass. at 580-581, quoting Suave, 460 Mass. at 588. Thus, to establish that the defendant is an SDP, the Commonwealth must prove that the defendant, if not confined, is likely to commit future sexual crimes that are either (1) contact offenses, or (2) noncontact offenses that would "instill in his victims a reasonable apprehension of being subjected to a contact sex crime." Suave, 460 Mass. at 588. See Fay, supra; Commonwealth v. Walker, 467 Mass. 1017, 1018-1019 (2014).

We agree with the defendant that the outcome here is controlled by Commonwealth v. Spring, 94 Mass. App. Ct. 310, 324 (2018), a recent case with facts strikingly like the one at bar.[2] In Spring, supra at 321-322, the trial judge did not instruct the jury on the requirement set out by the Supreme Judicial Court in Suave and its progeny, that if a defendant is determined to be likely to solely commit noncontact sexual offenses, he cannot be found to be an SDP unless it is also found that the noncontact offenses would instill in his victims a reasonable apprehension of being subjected to a contact sex offense. See Suave, 460 Mass. at 588; Walker, 467 Mass. at 1018. We held that trial counsel's failure to request such an

---

[2] Neither the parties nor the judge had the benefit of Spring at the time of trial in April 2017.

3

instruction amounted to constitutionally ineffective assistance of counsel warranting a new trial. Spring, supra at 320-324. We explained that because the judge did not define "menace" in the context of noncontact offenses, the instructions did not properly set forth each essential element of a c. 123A finding. Id. at 320-321. As a result, we were left with "a serious doubt whether the jury verdict would have been the same had the correct instruction been given, particularly where . . . there was no evidence of a history of noncontact offenses that would put a future victim in reasonable apprehension of a contact sexual offense." Id. at 324. This reasoning applies equally in today's case.[3]

Here, like in Spring, 94 Mass. App. Ct. at 312, the Commonwealth presented evidence at trial that the defendant had a history of both contact and noncontact sex offenses -- namely,

_____

[3] The Commonwealth argues that a Suave instruction is not required when, as here, there is sufficient evidence to show a likelihood of committing future contact offenses. Our decision in Spring, 94 Mass. App. Ct. at 321, 324, essentially rejected this argument.

    The Commonwealth also contends that Spring is distinguishable because in that case the jury received no explanation of the term menace, while the judge here instructed the jury on the "essence" of the requirement under Suave. We disagree. The judge's instructions here did not expound on the term "menace" in any meaningful way to convey that, if the jury were to conclude that the defendant was likely to solely commit a noncontact offense, such as possessing child pornography, the anticipated offense must "instill in his victims a reasonable apprehension of being subjected to a contact sex crime." Suave, 460 Mass. at 588.

possession of child pornography -- with his most recent contact offense occurring over twenty years before the SDP trial. The Commonwealth's sole witness at trial was qualified examiner Dr. Gregg Belle, who opined that the defendant suffered from "both a mental abnormality and a personality disorder as defined by statute." Dr. Belle also testified that the defendant was likely to commit a sexual offense if not confined to a secure facility, and therefore, he met the statutory definition of an SDP. Dr. Belle did not opine, however, on whether the defendant was more likely to commit a child pornography offense or a contact offense. The defendant relied on the testimony of Dr. Joseph Plaud and qualified examiner Dr. Robert Joss. Both experts testified that the defendant was not an SDP, and that he posed a low risk to commit a contact sexual offense in the future.

During the final charge, the trial judge, over defense counsel's objections, did not instruct the jury on what anticipated offending would render the defendant "a menace to the health and safety of other persons" for purposes of an SDP determination.[4] Instead, the judge instructed the jury that

---

[4] The judge's instructions largely tracked the model jury instructions in effect at the time of trial. The model instructions, however, called for a Suave instruction "only '[i]f the petitioner has a history of committing only noncontact sexual offenses not involving children." Spring, 94 Mass. App. Ct. at 317 n.14, quoting Massachusetts Superior Court Criminal

5

"[t]o satisfy its burden of proving that the [defendant] suffers from a mental abnormality, the Commonwealth must prove beyond a reasonable doubt that the [defendant] has a mental condition that causes him, at a minimum, serious difficulty in controlling his sexual behavior at the present time."  As for the third element of the statute, the judge instructed that the Commonwealth must prove that "as a result of a mental abnormality, [the defendant] is likely to commit sexual offenses in the future if not confined."

During deliberations, the jury sent a note to the judge requesting the legal definition of "sexual offense" as used in

---

Practice Jury Instructions §§ 10.1.4(c) n.1, at 10-18; 10.2.3(c) n.1 at 10-35 (2d ed. 2013).  The model instructions for SDP cases under G. L. c. 123A, §§ 9 and 12, have since been updated and now state under the second element of an SDP charge:

> "To show that [the defendant] has a mental abnormality that makes him predisposed to be a sexual 'menace,' the Commonwealth must prove that [the defendant] has some mental condition that makes him likely to commit sexual crimes that either (1) involve physical contact with nonconsenting adults or with children who are too young to consent, or (2) would instill in his victims 'a reasonable apprehension of being subjected' to a sexual crime involving such physical contact."

Massachusetts Superior Court Criminal Practice Jury Instructions § 9.1.2(b), at 9-7; § 9.2.2(b), at 9-18 (Mass. Cont. Legal Educ. 3d ed. 2018).  The same menacing conduct language was also added under the third element -- "Likely to Engage in Sexual Offenses Unless Confined."  See Massachusetts Superior Court Criminal Practice Jury Instructions, supra at § 9.1.2(c), at 9-10; § 9.2.2(c), at 9-22.

the judge's written instructions.[5]  In response, the judge

instructed the jury on the definition of sexual offense under

G. L. c. 123A, § 1, reciting a list of sexual offenses

enumerated in the statutory definition, including the possession

of child pornography.  About eight minutes later, the jury

returned a general verdict finding the defendant to be sexually

dangerous.

In the circumstances of this case, an instruction defining

the term "menace" as applied to noncontact offenses was

warranted.  See Commonwealth v. Almeida, 467 Mass. 1015, 1016

(2014) (vacating verdict in jury-waived trial and remanding for

judge to make menacing finding "within the Suave framework").

The judge's instructions therefore did not "'properly set forth

each essential element' of the statute" (citation omitted).

Spring, 94 Mass. App. Ct. at 320-321.  This error deprived the

defendant of his ability to present a meaningful defense at

trial,[6] and allowed the jury to conclude that the defendant was

---

[5] The judge's written instructions were not included in the
record appendix on appeal.

[6] During closing argument, defense counsel emphasized that it had
been twenty-four years since the defendant had committed a
contact sexual offense, which Dr. Plaud and Dr. Joss found to be
significant in their respective evaluations.  Without a Suave
instruction, however, defining the predicted conduct required to
find the defendant a "menace," the defendant was deprived of his
primary argument of defense at trial, i.e., that the likelihood
he may possess child pornography, and nothing more, was not
sufficient to find him to be sexually dangerous.  See
Commonwealth v. Fantauzzi, 91 Mass. App. Ct. 194, 206-207

sexually dangerous in circumstances that do not permit such a finding. See id., 94 Mass. App. Ct. at 324 ("a verdict based on a finding that the defendant was likely to possess child pornography, without more, would require reversal").

Applying the prejudicial error standard, a test that is "quantitatively more favorable to a defendant than the substantial risk of a miscarriage of justice test" we applied in Spring, Commonwealth v. Alphas, 430 Mass. 8, 23 (1999) (Greaney, J., concurring), "there is a reasonable possibility that the error might have contributed to the jury's verdict" (citation omitted). Commonwealth v. Odgren, 483 Mass. 41, 46 (2019). The defendant is therefore entitled to a new trial.

Conclusion.[7] The judgment is vacated, and the verdict is set aside.

So ordered.

By the Court (Milkey, Singh & Brennan, JJ.[8]),

Joseph F. Stanton

Clerk

Entered: April 25, 2023.

---

(2017), and cases cited (failure to give requested self-defense instruction reversible error when "self-defense was the defendant's primary defense").

[7] Given our disposition here, we need not address the defendant's other claims of error.

[8] The panelists are listed in order of seniority.

8